STATE OF NORTH CAROLINA      IN THE GENERAL COURT OF JUSTICE

                           SUPERIOR COURT DIVISION

COUNTY OF SURRY                 08-CVS-*991*

GARY MCKEITHAN, Individually, and on
Behalf of a Class of Others Similarly Situated,

|  |  |
|---|---|
|           Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| NOVANT HEALTH INC., | ) **COMPLAINT** |
| a North Carolina Non-Profit Corporation, | ) |
|  | ) **JURY TRIAL DEMANDED** |
| Serve: Lawrence U. McGee | ) |
|       Registered Agent | ) |
|       2085 Frontis Plaza Boulevard | ) |
|       Winston-Salem, N.C. 27103, | ) |
|  | ) |
|           Defendant. | ) |

Plaintiff Gary McKeithan ("Plaintiff"), individually and on behalf of all others

similarly situated, by and through his undersigned counsel, brings this action against

Novant Health, Inc. ("Defendant" or "Novant") and, in support thereof, states as follows:

## I. PRELIMINARY STATEMENT

1.     This action arises from Defendant's practice and policy of denying regular

and overtime pay to its employees who are "engaged to wait," in violation of the North

Carolina Wage and Hour Act and the Fair Labor Standards Act ("FLSA"). Plaintiff

brings this lawsuit as a class action pursuant to Rule 23 of the Federal Rules of Civil

Procedure and as a collective action under the FLSA, 29 U.S.C. § 216(b) to recover

unpaid wages owed to him and all other similarly situated Novant Health, Inc. employees

statewide.

## II. PARTIES, JURISDICTION AND VENUE

2.      Plaintiff currently is a resident of Surry County, North Carolina. He is a registered nurse and has worked as Critical Care Transport Team member with Novant Health, Inc. at all times relevant to the allegations stated herein.

3.      Novant Health, Inc. is a North Carolina non-profit corporation headquartered and doing business in Winston-Salem, Forsyth County, North Carolina. Novant Health's subsidiaries and/or affiliates include Forsyth Medical Center and Presbyterian Healthcare who provide critical care transport services to clients.

## III. CLASS ACTION ALLEGATIONS

4.      Named Plaintiff and the Class bring their First, Second and Third Claims for Relief for violation of the NCWHA, the FLSA and declaratory judgment, respectively, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as follows:

> All current and former Critical Care Transport service
> employees employed by Novant in the State of North
> Carolina who were not paid for time during which they
> were engaged to wait.

5.      *Numerosity*. Upon information and belief, there are approximately 100 presently and formerly employed Critical Care Transport service employees of Novant in North Carolina. Given Novant's considerable size and the systemic nature of its failure to comply with federal and state law, the members of the Class are so numerous that joinder of all members is impractical.

6.      *Commonality*. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting any individual member

2

of the Class, including Named Plaintiff. The questions of law and fact common to the Class include, but are not limited to:

> a. Whether Named Plaintiff and the Class were in fact employees who were engaged to wait;

> b. Whether Novant properly compensated Name Plaintiff and the Class for all work performed;

> c. Whether Novant engaged in conduct intended to misrepresent to Named Plaintiff and the Class that they were not and are not employees who were engaged to wait;

> d. Whether Novant failed to pay Named Plaintiff and the Class for work Novant required them to perform in violation of the NCWHA and whether such failure was willful; and

> e. The nature, extent and measure of damages for the loss suffered by Named Plaintiff and the Class.

7. *Typicality.* Named Plaintiff's claims are typical of the claims of the members of the Class. Named Plaintiff's claims arise from Novant's pattern and practice of widespread wage abuses against Critical Care Transport service employees, who make up the Class, by disavowing their status of employees who were engaged to wait.

8. *Adequacy.* Named Plaintiff will fairly and adequately protect the interests of the Class. Named Plaintiff has no interests that might conflict with the interests of the Class. Named Plaintiff is interested in pursuing his claims against Novant vigorously, and has retained counsel competent and experienced in class and complex litigation.

3

9.      Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists fro the fair and efficient adjudication of this controversy.

10.     Novant has acted on grounds generally applicable to the Class, thereby making relief appropriate with respect to the Class as a whole. Prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for Novant.

11.     The identity of the Class is readily identifiable from Novant's records, which records it is obligated to keep as a matter of law and its own corporate policy.

12.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

13.     Without a class action, Novant will likely retain the benefit of its wrongdoing and will continue a course of conduct that will result in further damages to Named Plaintiff and the Class.

## IV.  FLSA COLLECTIVE ACTION ALLEGATIONS

14.     Plaintiff's Second Claim for Relief, for violation of the FLSA provisions concerning overtime pay, is being brought as a collective action under § 16(b) of the

4

FLSA, 29 U.S.C. § 216(b), on behalf of all members of the Class, as defined in paragraph 25, *supra*, employed by Novant during the period beginning three years prior to the date of the filing of this Complaint (collectively, "The FLSA Collective Plaintiffs").

15.     At all times, Named Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, and their claims are essentially identical, in that Named Plaintiff and the FLSA Collective Plaintiffs:

        a.     Held substantially similar jobs and pay provisions;

        b.     Have been subjected to the same common policies, plans and rules, programs, and procedures of Novant unlawfully disavowing the FLSA Collective Plaintiffs' status as employees who were engaged to wait and denying them overtime wages;

        c.     Were subjected to the same willful misclassification as employees, despite being employees who were engaged to wait under the terms of federal and state law;

        d.     Were subject to the same policies, plans, programs and procedures requiring them to work more than forty (40) hours per week without proper compensation; and

        e.     Were subjected to the same kinds of injury by Novant's actions.

16.     The members of the FLSA Collective Plaintiffs are readily ascertainable upon reasonable discovery from records required to be maintained by Novant. Notice can be sent via first class mail to the last address known to Novant or through any other reasonable means then available.

5

## V. FACTS

17.     Plaintiff began his employment with Defendant as a Critical Care Transport (CCT) employee on or around October, 2002.

18.     At the time of his employment with CCT, Plaintiff was on a 40 hour work schedule. (Four 10 hour shifts.) He was required to be on the clock for 42 hours but was only compensated for 40 hours. Company policy required that a 30 minute meal break be automatically deducted from his clocked-in hours each shift.

19.     Furthermore, in July 2007 Plaintiff was issued a 36 Hour Time Track Policy, which required CCT Novant employees to arrive 30 minutes early and leave 30 minutes later than their designated start time. The policy stated in part:

> Each shift will begin 30 minutes before the top of the hour and end 30 minutes after. Example: If you are scheduled to work "7a – 7p", you are expected to clock in, ready for work at 0630. Your shift will end at 1930. . . . *This schedule will allow CCT to meet the business needs of our customers who have requested additional hours of coverage at their location.* The additional 15 minutes on either side of the shift is also necessary to ensure that staff are able to take the 2 (two) 30 minute meal breaks authorized by Novant policy and still be paid for 12 working hours.

(emphasis added). *See* Forsyth Medical Center Policy attached hereto as Exhibit A.

20.     Plaintiff also received a Novant Health Time Keeping Policy, which addressed Novant employees' meal breaks. The policy stated in part:

6

> Meal Periods are established for each department. 30-minute meal breaks are deducted automatically for all shifts of six hours or more. An additional 30-minute meal break automatically will be deducted for shifts of 11 hours or more in the Triad Region and for shifts of 14 hours or more in the Southern Piedmont Region.

*See* Novant's Time Keeping Policy attached hereto as Exhibit B, p. 3 of 5.

21. With respect specifically to the Critical Care Transport team's hours and breaks, Plaintiff was issued a "Working Hours and Breaks" policy, which notified the team in part that, ". . . due to the nature of the service, it is impossible to schedule specific mealbreaks. Current hospital policy applies, but again flexibility is a requirement." *See* "Working Hours and Breaks" policy attached hereto as Exhibit C.

22. As a member of a Critical Care Transport Team, Plaintiff also was issued a pager and a team phone and was on-call during his meals during all times relevant to the allegations herein. At no point is a team member completely relieved of duty for the purpose of enjoying a "bona fide meal period". As a member of a Critical Care Transport Team, Plaintiff is engaged to wait for his employer's benefit.

23. As an engaged-to-wait employee, Plaintiff is geographically restricted to either his employer's premises or so close to its premises that he cannot effectively use any stand-by time for personal purposes.

24. As an engaged-to-wait employee, Plaintiff must respond to the employer's call or act immediately and depart within 15 minutes of notification of a pending transport (unless already actively on a transport). As an engaged-to-wait employee, the use of a pager or team phone did not ease restrictions on Plaintiff, as the frequency of calls is unduly restrictive.

7

25.     As an engaged-to-wait employee, Plaintiff cannot easily trade on-call shifts with other employees. For example, if there are three ambulance teams operating, each team has its own assigned area. If one team is busy and another area is quiet, the overwhelmed crew will summons the quiet crew to come help with the patient load.

26.     From the beginning of Plaintiff's employment as a CCT employee until October 14, 2007, Plaintiff was required to clock in either 15 minutes or 30 minutes prior to his shift to compensate for his employer's accommodation of its customers' needs and for Plaintiff's mealtimes, even though he was on-call for Novant's benefits during his meals. He has never been compensated for this time.

27.     From the beginning of Plaintiff's employment as a CCT employee until October 14, 2007, Plaintiff was required to clock out either 15 minutes or 30 minutes after his shift to compensate for his employer's accommodation of its customers' needs and for Plaintiff's mealtimes, even though he was on-call for Novant's benefits during his meals. He has never been compensated for this time.

28.     Furthermore, on or around October 14, 2007, David Martin, RN, BSN, Nurse Manager, Forsyth Critical Care Transport of Novant Health notified his employees that they would no longer have to arrive early or stay late to compensate for their mealtimes in order to comply with state and federal labor laws.

29.     On or around October 19, 2007, Plaintiff filed a grievance with his immediate supervisor, David Martin, requesting that he be paid regular and overtime compensation for the cumulative hours he had previously worked with respect to early arrivals and late departures in connection with Novant's mealtime compensation policy.

8

30.     On or about October 23, 2007, Mr. Martin returned Plaintiff's grievance letter to Plaintiff and advised him to present it to Robin Jarvis with Employee Relations.

31.     On or around October 24, 2007, Plaintiff formally presented his grievance letter to Robin Jarvis, a representative of Novant's Employee Relations department.

32.     Between October 2007 and December 2007 Plaintiff was told that my grievance was "being researched". Plaintiff was asked by Robin Jarvis not to discuss the matter with anyone else.

33.     On or around December 12, 2007, Plaintiff met with Ms. Jarvis; Marilyn Gilliam, Director of Employee Relations; Lisa Kinney, Director of Benefits and Compensation; and another Employee Relations representative ("Employee Relations Group") to discuss his grievance.

34.     At the meeting, Plaintiff was advised that the reversal of policy regarding arrival and departure times for mealtime compensation was a local decision made by David Martin, which had not been authorized by corporate headquarters. Plaintiff was asked what triggered his grievance. He responded that it was the result of comments made by David Martin at the department staff meeting. Plaintiff was then informed that Mr. Martin had never been authorized to say the change was made "in order to comply with labor laws." Later Mr. Martin told Plaintiff privately that he was instructed by management to "get in compliance". Up until that time he said he was not aware of the difference between employees who "wait to engage" and those who are "engaged to wait."

35.     Plaintiff also was advised that the Employee Relations Group had taken a look at the log and noted that there are "down times" during which employees could eat,

9

but that if employees did not get an opportunity to eat they were to fill out a "no meal form."

36.    The Employee Relations Group ignored Plaintiff's explanation that he was always on-call for Novant's benefit during his meals and that, therefore, he effectively was still working and should be compensated for his hours. The Employee Relations Group disregarded Plaintiff's requests for back wages.

37.    Plaintiff and the Employee Relations Group agreed that they were at an impasse.

38.    Defendant pays Plaintiff and its other Critical Care Transport Team workers on an hourly, non-exempt status.

39.    Plaintiff has been denied regular and overtime compensation in the past.

40.    Defendant willfully fails to compensate Plaintiff for his back wages, although he lodged an internal administrative grievance.

### FIRST CLAIM FOR RELIEF
### Violation of North Carolina Wage and Hour Act
### (NCWHA) – N.C.G.S. § 95-25
### (Brought Against Defendant by Plaintiff, Individually
### and on Behalf of All Others Similarly Situated)

41.    Plaintiff realleges and incorporates the allegations of paragraph 1-40 as though fully set forth herein.

42.    At all times relevant to these allegations, Plaintiff was a salaried, non-exempt employee of Defendant and was entitled to the rights, protection and benefits under the NCWHA.

43.    The NCWHA provides that an employer must compensate an employee for all hours worked, and when an employee works longer than 40 hours in any

10

workweek, that employee must be paid at a rate of 1½ times the employee's regular pay rate for all hours worked in excess of 40. N.C.G.S. § 95-25.4.

44. Plaintiff worked both regular hours and hours in excess of 40 hours in compliance with Novant's early arrival/late departure mealtime compensation policy because Plaintiff was on-call for Novant's benefit during his meals.

45. Under federal labor law, "an employee who is required to remain on call on the employer's premises or so close thereto that he cannot use the time effectively for his own purposes is working while "on call." 29 C.F.R. 785.17.

46. Federal labor law further dictates that:

> A stenographer who reads a book while waiting for dictation, a messenger who works a crossword puzzle while awaiting assignments, fireman who plays checkers while waiting for alarms and a factory worker who talks to his fellow employees while awaiting for machinery to be repaired are all working during their periods of inactivity. . . . In all of these cases waiting is an integral part of the job. The employee is engaged to wait.

29 C.F.R. 785.15.

47. Novant routinely denied Plaintiff and similarly-situated employees straight time and overtime compensation in violation of N.C.G.S. § 95-25 et seq.

48. Pursuant to N.C.G.S. § 95-25.22, Plaintiff and similarly-situated employees are entitled to recover their unpaid wages and overtime compensation, plus interest at the current legal rate as set forth in N.C.G.S. § 24-1.

49. Pursuant to N.C.G.S. § 95-25.22, Plaintiff and similarly-situated employees also are entitled to an award of liquidated damages in an amount equal to the amount of unpaid overtime compensation, court costs, fees, and reasonable attorneys' fees.

11

## SECOND CLAIM FOR RELIEF
### Violation of the Fair Labor Standards Act of 1938
### (FLSA) – 29 U.S.C. §§ 201, *et seq.*
### (Brought Against Defendant by Plaintiff, Individually
### and on Behalf of All Others Similarly Situated)

50.     Plaintiff realleges and incorporates the allegations of paragraphs 1-49 as though fully set forth herein.

51.     At all times material herein, Plaintiff has been entitled to the rights, protections and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq.*

52.     The FLSA regulates, among other things, off the clock work and the payment of overtime compensation by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. §§ 207(a)(1).

53.     Although Novant is incorporated as a non-profit corporation, it nevertheless is subject to the provisions of the FLSA by statutory definition:

> "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that . . . is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution, . . . (regardless of whether or not such hospital, institution, or school is public or private or operated for profit or not for profit) . . . .

29 U.S.C. §§ 203(s)(1)(B).

54.     Defendant violated the FLSA by failing to pay its "engaged-to-wait" employees for overtime they worked to compensate for mealtimes during which they were on-call for Novant's benefit.

12

55.     Under 29 U.S.C. § 213, certain categories of employees are exempted from overtime pay.  Those exemptions do not apply to Plaintiff or other similarly-situated employees.

56.     Plaintiff and all similarly situated employees are entitled to damages equal to the mandated overtime pay within the three years preceding the filing of this Complaint, because Novant acted willfully and knew, or showed reckless disregard of the fact, that its conduct was in violation of the FLSA.

57.     Novant has not acted in good faith or with reasonable grounds to believe its actions were not in violation of the FLSA, and thus, Plaintiff and other similarly situated employees are entitled to recover liquidated damages in an amount equal to the amount of unpaid overtime pay described under 29 U.S.C. § 216(b).

58.     As a result of its willful violations of the FSLA, Defendant has unlawfully withheld overtime compensation from Plaintiff and all similarly situated employees. Accordingly, Novant is liable pursuant to 29 U.S.C. § 216(b), together with liquidated damages, prejudgment and postjudgment interest, reasonable attorneys' fees and costs of this action.

### THIRD CLAIM FOR RELIEF
### (Declaratory Judgment)

59.     Plaintiff realleges and incorporates the allegations of paragraphs 1-58 as though fully set forth herein.

60.     An actual dispute exists as to the respective rights, privileges and/or obligations of the parties under the NCWHA, and the FLSA, as set forth fully in Plaintiff's first two claims for relief.

Case 1:08-cv-00374-WO-WWD   Document 2   Filed 06/05/08   Page 13 of 27

61.     Novant has persistently and willfully continues to disavow the status of Plaintiff and members of the Class as employees who were and are engaged to wait, despite evidence to the contrary.

62.     Plaintiffs are in fact employees who are statutorily defined as being engaged to wait by Novant.

63.     Novant's action is ongoing, and a declaration of Plaintiffs' rights is necessary to prevent further wage and hour abuses by Novant.

64.     Plaintiffs are entitled under 28 U.S.C. § 2201 to a declaration that they are in fact employees who are engaged to wait by Novant under the terms of the NCWHA and FLSA.

**WHEREFORE**, the Named Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

(a)     Certification of this action as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the class and approving the Named Plaintiff as an adequate representative of the Class;

(b)     A declaration that the Named Plaintiff and members of the Class are/were employees who are engaged to wait by Novant;

(c)     A declaration that Novant has violated the NCWHA, N.C.G.S. § 95-25.1 *et seq.*, by unlawfully refusing to pay Named Plaintiff and the Class all wages due and payable to them;

(d)     An award of damages under the NCWHA in an amount to be determined at trial and liquidated damages under N.C.G.S. § 95-25.22;

14

(e)      Imposition of an injunction preventing Novant from further disavowing the status of Named Plaintiff and the Class as employees who are engaged to wait;

(f)      Attorney's fees and costs of the action under 29 U.S.C. § 1132(g) and N.C.G.S. §95-25.22(d).

(g)      That a trial by jury be had on all issues so triable; and

(h)      Such other relief as the Court deems just and proper.

**WHEREFORE**, the Named Plaintiff, on behalf of himself and the FLSA Collective Plaintiffs, pray for judgment as follows:

(a)      Designation of this action as a collective action under the terms of 29 U.S.C. § 216(b) on behalf of the FLSA Collective Plaintiffs, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly-situated members of the FLSA Opt-In Class, apprising them of the pendency of this action and permitting them to assert their FLSA claims in this action through individual consent;

(b)      Designation of the Named Plaintiff as representative of the Collective Plaintiffs;

(c)      A declaration that the FLSA Collective Plaintiffs are employees of Novant who were and/or are engaged to wait;

(d)      Injunctive relief to prevent Novant from disavowing the status of the FLSA Collective Plaintiffs as employees who were and/or are engaged to wait;

(e)     An award of compensatory damages for unpaid overtime wages owed to the FLSA Collective Plaintiffs in an amount to be determined at trial;

(f)     An award of liquidated damages in an amount equal to the amount of compensatory damages, as provided in 29 U.S.C. §216(b);

(g)     A reasonable attorneys' fee and costs of the action pursuant to 29 U.S.C. § 216(b);

(h)     Pre-judgment and post-judgment interest as provided by law;

(i)     That a trial by jury be had on all issues so triable; and

(j)     Such other relief as the Court deems fair and equitable.

This 29th day of April, 2008.

Respectfully submitted,

LAW OFFICES OF J. NEAL RODGERS, PLLC

J. Neal Rodgers, Esq.
N.C. Bar No. 20587
4000 Tuckaseegee Road
Charlotte, N.C. 28208
Telephone: (704) 392-4111
Facsimile: (704) 391-1905

16



**Forsyth) MEDICAL CENTER**

*Remarkable People. Remarkable Medicine.*



PLAINTIFF'S
EXHIBIT

A

| | |
|---|---|
| TITLE: | 36 Hour Time Track |
| FILE: | Critical Care Transport |
| POLICY: | Effective 29 July, 2007, the Critical Care Transport team at Forsyth Medical Center will begin working a schedule consisting of 3 (three) 12 hour shifts per week. |

1. For the purposes of scheduling and the typed schedule, the shifts will be referred to as one of the following: 7a – 7p, 8a – 8p or 7p – 7a

2. Each shift will begin 30 minutes before the top of the hour and end 30 minutes after. Example: If you are scheduled to work "7a – 7p", you are expected to clock in, ready for work at 0630. Your shift will end at 1930. For 8a – 8p shifts, the actual clock in time would be 0730 – 2030. This schedule will allow CCT to meet the business needs of our customers who have requested additional hours of coverage at their location. The additional 15 minutes on either side of the shift is also necessary to ensure that staff are able to take the 2 (two) 30 minute meal breaks authorized by Novant policy and still be paid for 12 working hours.

3. If transport volume is such that a second meal break is not possible, each staff member MUST document that no second lunch was taken and the reason why on a Time and Attendance form to be collected and reviewed by the manager.

4. All Novant Attendance policies will apply pertaining to late arrivals and leaving early. Two meal breaks are automatically subtracted so employees will be charged for any shifts worked over 10 hours. If a staff member is late or leaves early it will be reflected the employees' paycheck.

5. Staff working night shift will remain on night shift. Staff working day shift will remain on day shift. The weekend incentive or ANTs program is no longer available.

6. Management will release a 6 week time tract that includes a weekend rotation: Day shift staff will work one weekend (Saturday and Sunday) every six weeks; Night shift staff will work three weekends every six weeks. (This discrepancy is due to the higher volume during the daytime hours and the reduced number of night shifts required. This will be reviewed periodically and adjusted to meet the needs of the department at the managers' discretion.)

7. Scheduling will be as follows:
   a. Full time – 36 hours per week
   b. Part time – 24 hours (minimum) to 36 hours
   c. PRN – As needed dependant upon departmental needs
   d. Overtime – Only management can authorized scheduled overtime. Incidental overtime secondary to a late transport will be monitored.

8. Any vacancies will be posted internally first and filled at the discretion of the manager.


SUBMITTED BY:     David J. Martin, RN, BSN
                  Nurse Manager, Forsyth Critical Care Transport

APPROVED BY:      Sharon H. Summer, RN, MSN
                  Director, Novant Critical Care Transport


DATE:             6/07
TO BE REVIEWED:   6/09



NOVANT HEALTH

| POLICY TITLE | Time Keeping Policy |
|---|---|
| POLICY NUMBER | 3120 |
| JCAHO FUNCTIONS | |
| APPLIES TO | Non-exempt Employees of Novant Health, Inc. |

I.   SCOPE / PURPOSE

Novant Health maintains a time and attendance system that uses data collection terminals and telephones to collect time and attendance data. All non-exempt (hourly) employees are required to record hours worked by "badging" in or out at a data collection terminal or by using the time keeping telephone system. Non-exempt employees will be paid on the basis of information recorded by the time system.

II.   POLICY

Employee Responsibilities

1.   Employees must bring ID badges to work and wear them so that names and pictures can be seen at all times.

2.   All non-exempt employees are required to badge in using a terminal or telephone at the beginning of their shift and badge out at the end of their shift. The supervisor will determine the appropriate terminal(s) for each work area.

3.   Exempt employees are not required to badge.

4.   Employees who work in more than one department during their shift must department punch when they change departments.

5.   Employees must badge out upon leaving the premises during the shift for any non-work-related reason (doctor or dental appointments, for example) and badge in upon returning.

6.   Employees must badge out and back in for lunch, if required. Otherwise 30 minutes will be automatically deducted.

7.   Employees may not badge in more than seven minutes ahead of their scheduled shift starting time or badge out more than seven minutes after their shift ending time without prior supervisory approval.

8.   An employee may not, for any reason, badge in or out for another employee. Badging in or out for another employee is considered a Group 1 offense under the Progressive Discipline Policy and will result in disciplinary action for both employees, up to and including termination of employment.

9.   If the employee is unable to badge in or out, he or she should *notify the supervisor in writing*. Failure to do so may result in incorrect pay for the period. A Supplemental Time and Attendance Sheet or similar document should be completed for exception pay, missed punches or no lunch break. These documents should be kept for 10 years.

10.   Employees should contact the timekeeper with questions or issues before calling Payroll or Human Resources.

11.   Employees should not request / take more Paid Time Off (PTO) than they have accrued. Employees cannot take PTO in the same pay period it is accrued.

12.   If an employee loses a badge, he or she must obtain a badge requisition from his or her supervisor to obtain a new one. The badge should be requested within two days of the loss. A charge will be made for replacing a lost badge. If a new badge is required because of a change in department, name or

credentials, no charge will be made. If the old badge is found, it may no longer be used. It should be returned to the department responsible for issuing badges.

13. Upon termination of employment, either voluntary or involuntary, the badge must be returned to Novant Health.

14. Employees who have a question about their paycheck should bring their pay advice to their manager for discussion. Employees should talk with their bank about the timing of the deposit to their account.

## Timekeeper Responsibilities.

1. Attend timekeeper training.

2. Refer to Time:Care Training Manual before calling Payroll or Human Resources.

3. Do time "daily": Enter exception pay, missed punches, no breaks & pay codes from Supplemental Time & Attendance Sheet or call in sheets.

4. Review and correct "errors only range" daily and/or at least once a week.

5. Do not change in and out punches. Such edits may be considered falsification of records and may result in disciplinary action.

6. Be familiar with information on the time card: Workgroup, PTO Balance, Sick balance, FMLA balance, pay code totals, daily, weekly and period totals.

7. Check PTO, sick and FMLA balances *before* coding exception time.

8. Fill out Payroll Adjustment Forms, when appropriate.

9. If questions arise, share the Time Card Report with the employee.

10. Timekeeper and co-timekeeper should practice timekeeper skills every pay period so they can answer employees' questions on an ongoing basis.

11. Be available for employees during crucial payday periods (payday Friday and off-week Monday).

12. Plan ahead with the co-timekeeper for coverage for employees.

13. Leave an extended voice mail message with the name of an alternate person to call regarding Time:Care in your absence.

## Supervisor / Manager Responsibilities

1. Attend Time:Care Manager Training.

2. Appoint timekeeper and co-timekeeper.

3. Introduce employees to timekeepers.

4. Educate staff about Time:Care.

5. Allow timekeeper to attend timekeeper training.

6. Make sure timekeeper and co-timekeeper practice timekeeper skills every pay period, so they can answer employee's questions on an ongoing basis.

7. Be accessible to timekeepers.

8. Be supportive of timekeepers.

9. Do not allow an employee to work without his or her name badge (refer to dress code & security policies).

10. If an employee loses his or her badge, make sure the employee gets a new badge within two workdays.

Case 1:08-cv-00374-WO-WWD    Document 2    Filed 06/05/08    Page 20 of 27

11. Review PTO balances before approving PTO.

12. Do not change in and out punches. Such edits may be considered falsification of records and may result in disciplinary action.

13. Communicate to timekeeper before the Time:Care deadline regarding bonus pay, pull pay, charge pay or other exception time.

14. Approve and sign Supplemental Time & Attendance Sheets.

15. Approve and sign payroll adjustment forms.

16. Review and approve time before the payroll deadline. The supervisor/manager must audit and approve time when a timekeeper edits his or her own time.

17. Review and sign Final Edit Sheets to return to payroll.

## Meal Breaks

1. Meal periods are established for each department. 30-minute meal breaks are deducted automatically for all shifts of six hours or more. An additional 30-minute meal break automatically will be deducted for shifts of 11 hours or more in the Triad Region and for shifts of 14 hours or more in the Southern Piedmont Region.

2. Employees who take more than 30 minutes for a meal break should badge out upon beginning the break and badge in upon returning to work. Employees also are required to badge out when leaving the premises for a meal break. The system automatically will deduct the meal break or use the time off the clock, whichever is greater.

3. If a meal break is not taken, the employee must notify his or her supervisor in writing so that the time record may be adjusted.

4. If meal breaks are taken during shifts of less than six hours, the employee must notify his or her supervisor in writing so that the time record may be adjusted or badge out and back in for the meal break.

## Call-Back Pay

1. Call-back pay is paid to eligible employees who are "on call" and are called back into work. The time keeping system has a call-back function for use in these situations.

2. The employee is guaranteed a minimum of two hours' pay for a call-back. If more than two hours are worked, the total hours worked will be paid. Calculation is automatic.

3. Employees are not eligible for on-call pay for one area while actively working in another.

## Supplemental Time and Attendance Sheets

Supplemental Time and Attendance Sheets to report missed meal periods, incorrect badging or other exceptions to the time system (such as PTO) are available on the intranet and will be provided to each department by the timekeeper.

III. **DEFINITIONS**

IV. **RELATED DOCUMENTS**

Policy 6020 Meal and Rest Periods;  Policy 5002 Fair Labor Standards Act; Policy 6040 Progressive

Case 1:08-cv-00374-WO-WWD   Document 2   Filed 06/05/08   Page 21 of 27

Discipline

V.    REFERENCES


VI.   SUBMITTED BY

Daniel G. Clowers, Human Resources

VII.  KEY WORDS

Badging, exempt, non-exempt, Time:Care,

VIII. INITIAL EFFECTIVE DATE        9/1/02
      DATE REVISED
      DATE TO BE REVIEWED           9/1/05

Case 1:08-cv-00374-WO-WWD   Document 2   Filed 06/05/08   Page 22 of 27

## POLICY SIGNATURE SHEET (one copy only to be maintained by author)

| Company / Facility(s) | |
|---|---|
| Department | |
| Policy | |
| Action | |

### POLICY APPROVED BY:

| Title | Approved By | Signature | Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### COMMITTEES APPROVED BY:

| Committee | Chairperson/Designee | Date |
|---|---|---|
| | | |
| | | |

### DATES OF APPROVAL:

| Initial Effective Date | |
|---|---|
| Date Revised | |
| Date to be Reviewed | |


PLAINTIFF'S
EXHIBIT

# WORKING HOURS AND BREAKS

The Critical Care Transport team presently operates off of scheduling tracts. This means that a staff member will generally work with the same team at all times. Obvious exceptions are vacations, FMLA, schedule changes, etc. No alterations to a team members' tract without the scheduling committee reviewing the change with the team member first.

New team members should be aware that due to the nature of our service, a certain amount of flexibility is required. While every effort will be made to ensure that a team goes off duty at the scheduled time, occasionally calls late in the shift make this impossible.

Also due to the nature of the service, it is impossible to schedule specific mealbreaks. Current hospital policy applies, but again flexibility is a requirement.

Any scheduling changes, PTO requests, or other amendments must be submitted on a Supplemental Time and Attendance sheet prior to the development of the affected schedule.

STATE OF NORTH CAROLINA

SURRY COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
08 CVS 991

GARY MCKEITHAN, Individually
and on Behalf of a Class of Others
Similarly Situated,

   Plaintiff,

 v.

NOVANT HEALTH INC., A North
Carolina Non-Profit Corporation,

   Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

NOTICE OF FILING FOR REMOVAL
(OTHR)

**PLEASE TAKE NOTICE** that Defendant Novant Health Inc., by and through its undersigned counsel, has filed a Notice of Removal, a copy of which is attached hereto, with the United States District Court for the Middle District of North Carolina on June 5, 2008 pursuant to 28 U.S.C. §§ 1441 and 1446.

Dated this the 5ᵗʰ day of June, 2008.

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.

*C. Matthew Keen* / *(for by permission)*
C. Matthew Keen
N.C. State Bar No. 14204
matt.keen@ogletreedeakins.com

*Greg P. McGuire* / *(for by permission)*
Gregory P. McGuire
N.C. State Bar No. 14237
greg.mcguire@ogletreedeakins.com

2301 Sugar Bush Road, Suite 600
Raleigh, North Carolina  27612
919.787.9700
919.783.9412 facsimile

Sarah H. Roane
N.C. State Bar No. 24114
sarah.roane@ogletreedeakins.com

2725 Horse Pen Creek Road, Suite 101
Greensboro, North Carolina 27410
336.375.9737
336.375.4430 facsimile

2

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Notice of Filing for Removal was served upon the following person by placing the copy in the United States mail, certified, return receipt requested, properly addressed, and with the correct amount of postage affixed thereto:

> J. Neal Rodgers, Esq.
> Law Offices of J. Neal Rodgers, PLLC
> 4000 Tuckaseegee Road
> Charlotte, North Carolina 28208

Dated this the 5th day of June, 2008.

OGLETREE DEAKINS NASH
SMOAK & STEWART, PC

Sarah H. Roane
N.C. State Bar No. 24114
sarah.roane@ogletreedeakins.com

2725 Horse Pen Creek Road, Suite 101
Greensboro, North Carolina  27410-8392
336.375.9737
336.375.4430 facsimile

3